**CITY OF HOUSTON, Appellant,**

v.

**Gerald KALLINA, Appellee.**

**No. 14–99–01184–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 21, 2002.

Rehearing Overruled Feb. 6, 2003.

---

Cheryl Griffin Cash and Marcus L. Dobbs, for Appellant.

Paul Danziger and Rodrigo R. De Llano, for Appellee.

En Banc Panel consists of Chief Justice BRISTER, and Justices YATES, ANDERSON, HUDSON, FOWLER, EDELMAN, FROST, SEYMORE, GUZMAN, and Senior Justices LEE * and

* Senior Justice Norman R. Lee sitting by as-    signment.

WITTIG **.

## MAJORITY OPINION
## ON REHEARING
## EN BANC

SCOTT BRISTER, Chief Justice.

The City of Houston appeals from a judgment awarding $250,000 plus attorney's fees to its former employee, Gerald Kallina, under the Texas Whistleblower Act. On February 14, 2002, a panel of this Court modified the judgment by adding to it $65,000 in back pay, and otherwise affirmed.

On May 9, 2002, the Supreme Court of Texas issued its opinion in *Texas Department of Transportation v. Needham*, 82 S.W.3d 314, (Tex.2002), addressing for the first time the 1995 amendments defining "an appropriate law enforcement authority" under the Act. *See* Act of May 25, 1995, 74th Leg., R.S. ch. 721, §§ 1–12, 1995 Tex. Gen. Laws 3812 (current version at Tex. Gov't Code § 554.002(b)). We granted the City's motion for rehearing en banc to consider the effect of the latter opinion on the former. Finding that this new authority requires a different result, we withdraw the panel's opinion and issue this en banc opinion.

### *Jurisdiction*

■ As an initial matter, the City argues the trial court lacked subject-matter jurisdiction because Kallina did not initiate a grievance with the City as required. *See*

---

** Senior Justice Don Wittig sitting by assignment.

1. *See Fort Bend I.S.D. v. Rivera*, 93 S.W.3d 315 (Tex.App.-Houston [14th Dist.] 2002, no pet. h.) (Brister, C.J., concurring) (arguing failure to initiate grievance before filing suit is not jurisdictional and may be cured by abatement). Because all members of the Court agree the exhaustion requirement in this case has been satisfied, we need not decide whether the question is jurisdictional here. *See*

TEX. GOV'T CODE § 554.006(a). Assuming this requirement is jurisdictional,[1] we hold it does not bar Kallina's suit.

On January 19, 1998, Kallina sent a letter to Mayor Lee Brown claiming wrongful dismissal and requesting a hearing. The City's response on February 16, 1998 stated Kallina "had no civil-service protection or other internal review procedure," pointing to a city document in which he acknowledged that he was an executive-level employee and therefore exempt from all civil-service protections and procedures.

■ A governmental entity may not frustrate an employee's efforts to initiate a grievance and then challenge subject-matter jurisdiction on that basis. *See Fort Bend I.S.D. v. Rivera*, 93 S.W.3d 315 (Tex. App.-Houston [14th Dist.] 2002, no pet. h.) (holding plaintiff initiated grievance by requesting meeting with her supervisors, though they refused to meet with her); *University of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 775 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (holding notice of claim to employer was sufficient to initiate grievance when procedures were unclear). Kallina's letter to the City stating his claim was sufficient to initiate a grievance in light of the City's response that no other procedures applied to him. The City's first point is overruled.

### *Theft*

■ On the merits, we address whether Kallina's supervisor was a repre-

---

*Texas Dept. of Public Safety v. Kreipe*, 29 S.W.3d 334, 337 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (assuming without deciding that notice requirement was jurisdictional, as plaintiff could correct defect). For the same reason, it does not merit en banc consideration. *See* TEX.R.APP. P. 41.2(c) (stating en banc consideration should only be granted to maintain uniformity of court's decisions or in extraordinary circumstances).

sentative of an appropriate law enforcement authority, or whether Kallina had a good faith belief that she was. We review the former de novo, and the latter for legal sufficiency. *See Needham*, 82 S.W.3d at 318, 321.

Kallina worked as division manager in the fixed-asset department of the City of Houston. In the course of his duties, he conducted an inventory audit at a City warehouse where both abandoned and City-owned assets were stored. It was his opinion that 800 items worth at least $400,000 were missing, and he concluded they must have been stolen.

According to Kallina, he initially made an oral report of his findings to his supervisor, Lathenia Harris. He believed City policy required missing assets to be reported as stolen if not located after a thirty-day search, and eventually reported to the Mayor, the Controller, and perhaps City Council. Shortly after Kallina put his final report on Harris's desk, she abruptly informed him he had two days to resign or he would be fired. He complied, but later sued.

The Whistleblower Act prohibits termination of a government employee "who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a). The Act defines the latter as a "governmental entity ... that the employee in good faith believes is authorized to regulate under or enforce the law alleged to be violated in the report; or investigate or prosecute a violation of criminal law." TEX. GOV'T CODE § 554.002(b). Although the City and Kallina raised a number of other issues, we address only the City's assertion that Kallina's report to Harris did not fall within the scope of this definition.

In *Needham*, an employee of the Texas Department of Transportation ("TxDOT") reported a co-worker's drunk driving to his supervisors at the department. He argued TxDOT was included in the statutory definition because the department could investigate allegations about criminal acts by employees, discipline them for such acts, and forward information to other agencies for prosecution. The supreme court rejected this interpretation of the statute, holding the focus must be on enforcement of the particular law reportedly violated:

> In other words, the particular law the public employee reported violated is critical to the determination ... TxDOT has no authority to regulate under or enforce the Texas's driving while intoxicated laws. Nor does it have authority to investigate or prosecute these criminal laws. At most, TxDOT has authority to regulate and investigate its employees' conduct only to carry out its internal disciplinary process procedures. But construing the statutory terms to include a public employer's internal disciplinary power would mean all public employers with a disciplinary policy for handling employees' alleged illegal conduct are "appropriate law enforcement authorities" for purposes of reporting any alleged violation. We reject such an interpretation.

*Needham*, 82 S.W.3d at 320 (citations omitted).

Here, the reported violation concerned theft. There was no evidence Harris or anyone else in the City's asset management department had (or that Kallina believed they had) any authority to investigate, enforce, or prosecute a violation of the state's penal laws regarding property theft. At most, the evidence showed Harris had administrative responsibility for assets in the warehouse, regulated and enforced departmental rules for protecting

that property, and was required to investigate and report any criminal activity. But Kallina conceded he knew Harris could only forward evidence of theft to the police for actual investigation and prosecution under state law. *Needham* holds this is not enough. *Id.* Almost any supervisor has a duty to keep departmental property from disappearing, and report or discipline subordinate employees if it does. Harris had authority to investigate employees' conduct and carry out internal disciplinary procedures, but no authority to enforce the theft laws of the state of Texas. We hold as a matter of law the City's asset management department was not an appropriate law enforcement authority under the Whistleblower Act, and there was no evidence Kallina had an objectively reasonable belief otherwise. *See id.* at 320–21 (holding good faith must meet both subjective and objective tests).

### *Inventories*

■ In one sentence in his appellate brief, Kallina argues alternatively that he was terminated for reporting violations of the City's inventory procedures. The Whistleblower Act protects employees who report violations not only of statutes, but also of ordinances or "a rule adopted under a statute or ordinance." *See* Tex. Gov't Code § 554.001(1). Kallina points to no City ordinances that were violated, but argues his report was based on violations of two City manuals—the City's Fixed Asset Accounting Procedures and Fixed Asset Accounting Policies—which he says contain "rules adopted under an ordinance."

First, we doubt switching from statutes to rules changes the definition of "law enforcement authority." Although the court in *Needham* addressed only a penal statute, it expressly rejected (in the quotation noted above) any interpretation of the Act that would extend "law enforcement" to supervisors carrying out internal disciplinary procedures. This is not new— several years before *Needham,* the court ruled that the Whistleblower Act does not protect reports of violations of a department's internal policies. *See Harris County Precinct Four Constable Dept. v. Grabowski,* 922 S.W.2d 954, 956 (Tex.1996) (holding statute did not apply to reported violation of constable's internal policies); *see also Ruiz v. City of San Antonio,* 966 S.W.2d 128, 130 (Tex.App.-Austin 1998, no pet.) (affirming dismissal of claims related to violations of police department's internal policies).

But even if "law enforcement" expands when considering "rules adopted under an ordinance," nothing reported by Kallina fell in that category. Of the two manuals upon which he relies, Kallina admits the Procedures manual was adopted under the authority of the Policies manual, not any statute or ordinance. But he asserts the Policies manual was "derived from the Code of Ordinances," though he leaves us to guess what ordinances he has in mind.

Our dissenting colleagues helpfully suggest that the Policies manual was adopted under City ordinances 2–51(6) and 2–52(19). But the former merely designates the director of the department of finance and administration as the chief custodian of all City property;[2] the latter merely

2. "... the director of finance and administration, subject to the direction and supervision of the mayor, shall:

. . .

(6) Be the chief custodian of all city property, both real and personal, except property

that is assigned by law or by directive of the mayor to the custody of another city officer or department. Following the conclusion of each city fiscal year, the director shall provide the mayor with a full annual inventory of all property within his custody."

requires the director to manage the city's property.[3] Nothing in either gives the director or the department the power to adopt rules of any kind. Of course, neither prohibits the department from adopting internal rules, but such rules would not be "adopted under a statute or ordinance."

Our colleagues also point to language giving the director "responsibility for developing and implementing operating policies and procedures covering the management and security of all City-owned property." Although it is difficult to tell from their opinion, this directive appears not in any City ordinance, but in the Policies manual itself. Obviously, any rule adopted under this authority would be adopted under an *internal policy* not under an ordinance.

The Policies manual here was issued by the City Controller and the Mayor; the Procedures manual was issued by the director of the finance department. Neither was adopted by the Houston City Council. It is quite clear that these manuals (and the hundreds of pages they contain) reflect internal policies rather than rules promulgated pursuant to an ordinance. That is not enough. *See Needham,* 82 S.W.3d at 320; *Grabowski,* 922 S.W.2d at 956.

### Conclusion

Without question, Kallina had a duty to report possible theft or violations of department procedures to his supervisor. That was his job. The legislature might have drafted the Whistleblower Act to provide immunity for all reports governmental employees make to their supervisors, but it did not. Instead, it protected only reports made to appropriate law enforcement authorities.

Accordingly, the judgment of the trial court is reversed, and judgment is rendered that Gerald Kallina take nothing.

Senior Justice LEE filed a dissenting opinion in which Senior Justice WITTIG joined.

NORMAN R. LEE, Senior Justice, dissenting.

The en banc majority reverses and renders judgment against Kallina based on two conclusions: (1) the City's fixed-asset policies were not adopted under any statute or ordinance; and (2) there was no evidence Kallina believed in good faith that Lathenia Harris was an appropriate law enforcement authority to which he could report theft. However, there was legally sufficient evidence that the fixed-asset policies were adopted under city ordinances, and there was legally sufficient evidence Kallina believed in good faith that Harris was an appropriate law enforcement authority. Therefore, I respectfully dissent.

The Texas Whistleblower Act does not apply only to reports of criminal violations; rather it also applies to reports of violations of rules adopted under a statute or ordinance. *See* TEX. GOV'T CODE § 554.001(1)(C); *Jones v. City of Stephenville,* 896 S.W.2d 574, 575–76 (Tex.App.-

---

HOUSTON, TEX., CODE OF ORDINANCES ch. 2, art. III, div. 1, § 2–51.

**3.** "The department of finance and administration and such employees of the department as are assigned to it shall be charged with the following duties:

. . .

(19) Manage the city's real and personal property within the custody of the director, including surplus city personal property, and maintain a perpetual inventory thereof; provided, however, that any surplus personal property that has a fair market value of not more than $15.00 may, at the discretion of the city purchasing agent, be destroyed or disposed of in any lawful manner."
HOUSTON, TEX., CODE OF ORDINANCES ch. 2, art. III, div. 1, § 2–52.

Eastland 1995, no writ) (report of violation of policy contained in Employee Handbook was a report of violation of law because handbook was a rule adopted under a statute or ordinance). Kallina asserts two different theories of recovery under the Texas Whistleblower Act. Under one theory, Kallina reported the violation of fixed-asset policies adopted under a statute or ordinance to Harris, who he believed in good faith was authorized to regulate under or enforce these policies.

Although the majority relies on the recent *Needham* case, *Needham* does not apply to Kallina's theory of recovery under the fixed-asset policies. *See Texas Dept. of Transp. v. Needham,* 82 S.W.3d 314, 315–22 (Tex.2002). *Needham* is not on point because it involved alleged violations of the criminal law—not violations of policies adopted under a statute or ordinance—and because, unlike in *Needham,* there was sufficient evidence at trial that Harris was an appropriate law enforcement authority for these policies. *See id.* In this case, Harris was authorized to regulate under and enforce the fixed-assets policies. Kallina does not rely on internal disciplinary procedures as the plaintiff did in *Needham. See id.* at 321–22. Furthermore, the majority reads *Needham* too broadly. In discussing the determination of whether the plaintiff has reported a violation of law in good faith to an appropriate law enforcement authority, the *Needham* court stressed that "the particular law the public employee reported violated is critical to the determination." *Id.* at 320.

The jury found in Kallina's favor, and, on appeal, Kallina has asserted his theory based on the fixed-asset policies. The City of Houston Fixed Asset Accounting Policies were admitted in evidence at trial. These policies indicate that they were adopted under City of Houston ordinances (emphasis added):

> The *responsibilities* of the Director of Finance and Administration for fixed assets *are described in the Code of Ordinances.* Chapter 2, Sections 2–51(6), and 2–52(19), and relate to the physical custody, security and inventory control thereof on behalf of the Citizens. The Code of Ordinances states that:

>> "... the Director of Finance and Administration, subject to the direction and supervision of the Mayor, shall.... Be the chief custodian of all city property, both real and personal, except property that is assigned by law or directive of the mayor to the custody of another city officer or department. Following the conclusion of each city fiscal year, the director shall provide the mayor with a full annual inventory of all property within his custody."

>> "The Department of Finance and Administration shall be charged with the following duties ... (19) *Manage the city's real and personal property within the custody of the director, including surplus city personal property, and maintain a perpetual inventory thereof.*"

> The Director of Finance and Administration shall have *responsibility for developing and implementing operating policies and procedures covering the management and security of all City-owned property.* ... In carrying out these duties, the Director shall be responsible for:

> . . .

> h) Establishing a Fixed Asset Management program within Finance and Administration to coordinate the development and dissemination of fixed asset policies and procedures....

In conducting a legal-sufficiency analysis, we review the evidence in a light that tends to support the disputed findings and disregard all evidence and inferences to the contrary. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex.2001). If more than a scintilla of evidence exists, it is legally sufficient. *Id.* More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83. After citing two ordinances regarding the responsibility of the Department of Finance and Administration for managing city property and maintaining a perpetual inventory thereof, the policies state that the Director of Finance and Administration has responsibility for developing and implementing operating policies and procedures for the management and security of all city property. While the policies do not explicitly recite that they are adopted under these ordinances; in these circumstances, the reasonable meaning of the above language is that the polices were adopted under these ordinances. Based on the above language from the fixed-asset policies, there was legally sufficient evidence that these policies were adopted under sections 2–51(6) and 2–52(19) of the Houston Code of Ordinances. *See* City of Houston, Texas, Code of Ordinances §§ 2–51(6), 2–52(19); *City of Stephenville*, 896 S.W.2d at 576.

The majority states that these policies do not indicate they were adopted under the authority of any ordinance and that the ordinances do not delegate any rule-making authority to Director of Finance and Administration. While there is no Texas Supreme Court authority on point, the majority's holding is too narrow, and it conflicts with a decision of the Eastland Court of Appeals. *See City of Stephenville*, 896 S.W.2d at 576 (report of violation of policy contained in Employee Handbook was a report of violation of law because handbook was a rule adopted under a statute or ordinance).

The *Grabowski* and *Ruiz* cases cited by the majority are not on point. *See Harris Cty. Precinct Four Constable Dept. v. Grabowski*, 922 S.W.2d 954, 956 (Tex.1996); *Ruiz v. City of San Antonio*, 966 S.W.2d 128, 130 (Tex.App.-Austin 1998, no pet.). Unlike Kallina, the plaintiff in *Grabowski* did not allege that the departmental polices in question were adopted under a statute or ordinance. *See Grabowski*, 922 S.W.2d at 955–56. The *Ruiz* court held that summary judgment was improper because Ruiz had alleged violations of the criminal law, without addressing whether any departmental policies were adopted under a statute or ordinance. *See Ruiz*, 966 S.W.2d at 130–31. The *Ruiz* court correctly stated that the Texas Whistleblower Act does not protect violations of internal policy not adopted under a statute or ordinance. *See Ruiz*, 966 S.W.2d at 130 (citing Tex. Gov't Code § 554.001(1) and *Grabowski* ). Conversely, the Texas Whistleblower Act does protect violations of policies adopted under a statute or ordinance. *See* Tex. Gov't Code § 554.001(1)(C); *City of Stephenville*, 896 S.W.2d at 576.

The Texas Whistleblower Act does not require that the policies explicitly state that they are adopted under an ordinance, and it does not require that the ordinance explicitly give rule-making authority to the entity that made the rule. *See* Tex. Gov't Code § 554.001(1)(C); *City of Stephenville*, 896 S.W.2d at 575–76. The policies recite that Houston ordinances charge the Director of Finance and Administration with responsibility for managing city property and maintaining a perpetual inventory thereof. They then state that the Director is responsible for implementing policies for the management and security of all city

property, and they outline policies for the management and security of all city property. The fixed-asset policies were adopted under City of Houston ordinances, and, therefore, they are a law whose violation may be reported under the Texas Whistleblower Act. *See* TEX. GOV'T CODE § 554.001(1); *City of Stephenville,* 896 S.W.2d at 575–76.

Policy # 1 requires city employees to exercise the utmost care and diligence in protecting the city property placed under their control:

> City employees, regardless of classification or function, shall exercise the utmost care and diligence in the use, maintenance and protection of all public assets placed under their control or custody.

Policy # 14 requires that departments maintain current and accurate fixed-asset-inventory records:

> The departments shall maintain accountability for their equipment and current and accurate fixed asset physical inventory records by conducting physical inventories under the coordination of the Finance & Administration Department (F & A).

The evidence strongly supports the jury's finding that Kallina believed in good faith that Harris was an appropriate law enforcement authority as to the fixed-asset policies. As the majority correctly states, the evidence showed that Harris had administrative responsibility for the assets in the Broad Street Warehouse and that she regulated and enforced departmental rules for protecting those assets. Harris testified that she enforces the rules regarding inventory and that if somebody has a problem with these rules he can come to her about it. Kallina and Harris both testified that Harris had the authority to enforce these policies regarding the inventory at the Broad Street Warehouse. Considering the evidence in a light that tends to support the jury's findings and disregarding all evidence and inferences to the contrary, there was legally sufficient evidence to support the jury's finding that Kallina believed in good faith Harris was authorized to regulate under or enforce the fixed-asset policies and that this belief was reasonable in light of Kallina's training and experience. *See Needham,* 82 S.W.3d at 320–21; *Lee Lewis Const., Inc.,* 70 S.W.3d at 782–87.

There was also legally sufficient evidence that Kallina was terminated for reporting in good faith violations of Policies # 1 and # 14 to Harris. Kallina testified he determined that there were approximately 800 assets listed on the inventory records that were not in the Broad Street Warehouse and that these assets were worth in excess of $400,000. Kallina testified that Jerry Ferguson, the manager of the Broad Street Warehouse, was not responsive and that he was stalling in response to Kallina's requests that he take steps to maintain current and accurate inventory records at the Broad Street Warehouse. There was evidence that, both orally and by his memorandum of December 8, 1997, Kallina informed Harris of this discrepancy and failure to maintain accurate inventory records. There was evidence that Kallina reported Ferguson's failure to exercise the utmost care and diligence in the use and protection of all public assets placed under his control or custody. There was also evidence that Kallina reported the failure to maintain current and accurate physical inventory records by conducting physical inventories under the coordination of the Finance & Administration Department. Considering the evidence in a light that tends to support the jury's findings and disregarding all evidence and inferences to the contrary, there was legally sufficient evidence to

support a jury finding that Kallina was terminated for reporting in good faith violations of Policies # 1 and # 14 to Harris. *See Lee Lewis Const., Inc.,* 70 S.W.3d at 782–87. Therefore, the majority errs in sustaining the City's second issue on the ground that there was legally insufficient evidence to support the jury's finding of liability under Kallina's fixed-asset-policies theory.

Alternatively, the majority holds there was no evidence Kallina believed in good faith that Harris was an appropriate law enforcement authority to which he could report theft. For this holding, the majority relies on the *Needham* case. *See Needham,* 82 S.W.3d at 315–22. Even as to the theory that Kallina was reporting a violation of the criminal law against theft, the *Needham* case is not directly on point. In *Needham,* the only evidence of the plaintiff's good faith belief that the report was made to an appropriate law enforcement authority was his employer's disciplinary process, his participation therein, and his belief that his employer could forward information to another entity to prosecute his co-worker for drunk driving. *See Needham,* 82 S.W.3d at 321–22. In this case, the alleged law enforcement authority herself testified that her job was to enforce the rules and to make sure there was no criminal activity at the Broad Street Warehouse. Therefore, even after *Needham,* there was legally sufficient evidence to support the jury's finding that Kallina reported in good faith to an appropriate law enforcement authority under both of his theories of recovery. Under both of these theories, this court errs in determining that there was legally insufficient evidence. For all of the above reasons, I respectfully dissent.