Opinion issued July 3, 2008




 










     


In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00490-CV




THE UNIVERSITY OF HOUSTON, Appellant

v.

STEPHEN BARTH, Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2001–34089




DISSENTING OPINION

          I respectfully dissent. I disagree with the majority opinion’s determination that
the University waives its legal sufficiency challenge due to inadequate briefing. By
addressing each of the arguments presented by the parties, I would hold that the
evidence is legally insufficient to show that Stephen Barth, in good faith, reported a
violation of the law to an appropriate law enforcement authority, as those terms are
defined by the Texas Whistleblower Act (“the Act”). See Tex. Gov’t Code Ann.
§§ 554.001–.010 (Vernon 2004). The people to whom Barth reported the conduct by
Alan Stutts do not meet the definition of an appropriate law enforcement authority
under the Act. Also, Barth, an attorney with experience in the requirements of the
Act, cannot objectively show he had a good faith belief the people to whom he
reported the conduct were appropriate law enforcement authorities. Further, Barth’s
report to the police came after the alleged retaliatory acts and, therefore, Barth cannot,
as a matter of law, show that the retaliatory acts were caused by the report to the
police. I would therefore reverse and render judgment in favor of the University of
Houston (“the University”).
Waiver of Appeal
          I respectfully disagree with the majority opinion’s determination that the
challenge to the legal sufficiency of the evidence is waived due to inadequate
briefing. According to the majority opinion, “the University makes no argument
directed toward Barth’s claim that his whistleblower claim is based on his report of
a violation of the law governing state contracts.” The majority opinion errs in finding
waiver because it finds waiver (A) based on the University’s failure to present Barth’s
theory for him; (B) based on the faulty premise that “the University makes no
argument” about the law governing state contracts; (C) despite no complaint of
inadequate briefing; and (D) despite the clear challenge to the elements of the claim. 
These reasons are detailed more specifically below.
          A. Waiver Based on Failure to Present Barth’s Theory for Him 
          The majority opinion finds waiver based on the University’s failure to present
Barth’s theory for him. It is apparent that the University did not present Barth’s
theory for him because that theory is immaterial to the University’s no-evidence
challenge. The University’s issue number one inquires, “Is there legally and factually
sufficient evidence to support the jury’s finding that Barth’s report was causally
linked to the alleged adverse actions taken against him?” The subpart of this issue
asks, “Were the individuals to whom Barth reported the alleged policy and/or legal
violations appropriate law enforcement officials under the Texas Whistleblower
Act?” In its opening brief, the University states its theory as follows: 
The report must have been made to an appropriate law enforcement
official. Although Barth reported alleged violations of internal
University policy to several University officials, his only report to an
appropriate law enforcement official was his report to the University of
Houston Police Department. The alleged adverse actions for which
Barth sought judicial relief all occurred before his report to the UH
Police Department. Accordingly, Barth failed to demonstrate that but
for his report, the purported adverse employment actions would not have
occurred when they did.

The University explains that Randy Harris, Don Guyton, and Dennis Duffy are not
appropriate law enforcement officials under the Act because the only law to be
enforced was the Penal Code, and the people to whom Barth reported could not
enforce that law. With respect to Guyton’s audit team, the University contends, 
Only when an audit uncovers evidence of suspected criminal activity
does the audit team turn the case over to UH police and may cooperate
with any police investigation. . . . None of the individuals to whom
Barth made the reports were responsible for investigating or enforcing
the law in question. . . . Instead, they were only charged with
cooperating with the Police Department’s investigation.

          The elements of a claim under the Act that an employee must prove are that:
(1) he is a public employee; (2) he acted in good faith in making his report; (3) the
report involved a violation of law; (4) the report was made to an appropriate law
enforcement authority; and (5) he suffered retaliation as a result of making the
report. State v. Lueck, 212 S.W.3d 630, 637 n.3 (Tex. App.—Austin 2006, pet. filed). 
In its legal sufficiency issues, the University plainly challenges the second element,
which requires that the employee act in good faith in making the report; the fourth
element, which requires that the report be made to an “appropriate law enforcement
authority”; and the fifth element, which requires proof of causation, in that the
employee must show that he suffered retaliation as a result of making the report. 
          If the University’s arguments and authorities in the opening brief are correct—
that the only law violated was the Penal Code, that the people to whom Barth reported
were not appropriate law enforcement officials, that the report to the University police
came too late, and that Barth did not have a good faith belief that the people to whom
he reported were appropriate law enforcement officials—then the University must
prevail in its challenge to the legal sufficiency of the evidence. This is because the
University has shown that there is no evidence of the required elements that the report
must be made to an appropriate law enforcement authority or to someone whom Barth
believed, in good faith, to be an appropriate law enforcement authority, and that he
suffered retaliation as a result of making the report. See id. Thus, the legal
sufficiency challenge is adequate for the University to prove that there is no evidence
of the required elements of the cause of action.
          Barth attempts to respond to the University’s claims by briefly presenting an
alternate argument concerning what the majority opinion calls “the law governing
state contracts.” In its entirety, the sole argument by Barth concerning civil law is:
In addition, Guyton’s position as Internal Auditor is established under
Chapter 2102 of the Texas Government Code. . . . Pursuant to Tex.
Gov’t Code §§ 2102.007 and 2102.003, Guyton is authorized to
conduct audits including an “investigation described by Section
321.0136.” Tex. Gov’t Code §321.0136 defines investigation as “an
inquiry into specified acts or allegations of impropriety, malfeasance, or
nonfeasance in the obligation, expenditure, receipt, or use of state funds,
or into specified financial transactions or practices that may involve
such impropriety, malfeasance, or nonfeasance.” Malfeasance is defined
as “a wrongful or unlawful act; esp. wrongdoing or misconduct by a
public official.” Black’s Law Dictionary 976 (8th Ed.). A
reasonable interpretation of the scope of Guyton’s statutory duty is that
he is authorized to investigate violations of criminal and civil law
involving impropriety or malfeasance in the use of state funds. 

          The Act provides that “a report is made to an appropriate law enforcement
authority if the authority is a part of a state or local governmental entity or of the
federal government that the employee in good faith believes is authorized to:
(1) regulate under or enforce the law alleged to be violated in the report; or
(2) investigate or prosecute a violation of criminal law.” Tex. Gov’t Code Ann.
§ 554.002(b); see Tex. Dep’t of Transp. v. Needham, 82 S.W.3d 314, 317–18 (Tex.
2002). A close examination of Barth’s argument reveals that Barth makes no claim
concerning the first alternative. More specifically, Barth makes no argument that
Guyton or Harris were authorized to “regulate under or enforce” either the rules that
apply to the University system or civil regulations over state contracts. See Tex.
Gov’t Code Ann. § 554.002(b). Barth’s argument focuses on the second alternative,
which requires evidence that the person have been authorized to “investigate or
prosecute a violation of criminal law.” See Needham, 82 S.W.3d at 317–18. By
referring to Guyton’s authority to investigate civil and criminal law, Barth
misinterprets the second alternative, which applies only to investigation or
prosecution of a violation of criminal law. See id. The University’s entire opening
brief repeatedly expresses its position that no person or entity, other than the
University Police, could “investigate or prosecute a violation of criminal law.” See
id. Because the only dispute concerns whether the people to whom Barth reported
could investigate or prosecute a violation of criminal law, the University did not
waive any argument concerning regulation or enforcement of a civil law.
          The University’s legal sufficiency challenge was sufficient to attack the
elements of the claim, and Barth responded to that challenge with his theory of the
evidence. Nothing in the Rules of Appellate Procedure requires that the appellant
present the appellee’s arguments for the appellee. Thus, the majority opinion errs by
finding waiver based on the University’s failure to present Barth’s theory for him. 
          B. Waiver Based on Faulty Premise 
           The majority opinion finds waiver based on the faulty premise that “the
University makes no argument” about the laws governing state contracts. This claim
is erroneous because the University does respond to Barth’s arguments. 
          Although the majority opinion finds it fatal that the University purportedly did
not make an argument about laws governing state contracts, it is important to note,
as shown from the quoted excerpt above, that Barth does not make any specific
argument about state contracts. Barth’s focus is on the investigation of violations of
criminal and civil law involving impropriety or malfeasance in the use of state funds. 
Moreover, Barth misinterprets the second alternative by suggesting that an
investigation into a violation of a civil rule or regulation would meet the requirements
of the Act. See id. The Act plainly includes only the investigation or prosecution of
criminal law. Id.
          Until Barth presents the alternate theory about civil law, there is no reason for
the University to mention state contracting laws, because that matter is irrelevant
under the University’s theory that only the law in the Penal Code applies to this
factual situation. However, after Barth presents his theory in his appellee’s brief, the
University’s reply brief responds to Barth’s position as follows:
Barth alternatively asserts that Harris, Guyton, and Duffy each in their
own right are appropriate law enforcement authorities under the Act. 
 As the Texas Supreme Court has emphasized, the particular law that the
employee reported was violated is crucial to the determination of
whether a report was made to an appropriate law enforcement official.
. . . The law in question here is Penal Code § 37.10, which prohibits the
knowing entry of false information in a government record. Barth
ignores this part of the inquiry in his brief, instead focusing on the
generalized authority of each individual to whom he made the reports.

(Emphasis added and citations omitted). The University, therefore, directly disputes
Barth’s contention by arguing that nothing in Guyton’s “generalized authority” would
make Guyton an appropriate law enforcement authority “in [his] own right.” The
majority opinion therefore errs by finding waiver based on the faulty premise that
Barth made an argument about laws governing state contracts and that the University
did not respond to the argument presented by Barth. 
          C. Waiver Despite No Complaint of Inadequate Briefing
          Although a party is not required to assert waiver for an appellate court to
determine that a matter is waived, it is noteworthy that Barth never contends that the
University’s brief is inadequate in any way or that we should find any issue waived. 
Barth understands the no-evidence challenge by responding with his claims
concerning that challenge. The majority opinion’s sua sponte finding of waiver is not
based on any complaint of inadequate briefing. 
          D. Waiver Despite Clear Challenge to Elements of Claim 
          The majority opinion finds waiver even though the University could prevail on
its legal sufficiency challenge if it established what it complained of in its opening
brief. It is undisputed that the University’s brief (1) plainly asserts an issue
challenging the legal sufficiency of the evidence concerning whether Barth’s reports
were to an appropriate law enforcement authority prior to the alleged retaliatory acts;
(2) includes citations to the record, legal authority, and analysis to support the issue;
(3) clearly expresses the position that the people to whom Barth reported the
purported violations were not the appropriate law enforcement officials under the Act
because the only applicable law is the Penal Code and none of the officials to whom
he reported could investigate violations of the Penal Code, even when considering the
rules that apply to the University system; and (4) asserts Barth did not have a good
faith belief that the people to whom he made the report were the appropriate ones
under the Act. But this is not enough under the holding of the majority opinion. 
According to the majority opinion, the University must also have presented Barth’s
alternate position about state contracting laws and then negated that theory by doing
more than affirmatively explaining why it is an incorrect theory. That is not the law
that pertains to the briefing requirements, which requires that we liberally construe
briefs and that the statement of an issue will be treated as covering every subsidiary
question that is fairly included. See Tex. R. App. P. 38.1(e), 38.9.
          To support its theory that the University waived error by not attacking each
ground under which the jury made its liability finding, the majority opinion cites to
Britton v. Texas Department of Criminal Justice, 95 S.W.3d 676, 681 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). That case holds that when a plea to the
jurisdiction is on multiple grounds and a trial court sustains it without specifying the
grounds, an appellant waives error by not challenging each of the alternate grounds. 
Id. In Britton, we explained,
The rule that an appellant must attack all independent grounds
supporting a judgment has been applied in many instances. For
example, when a summary judgment motion alleges multiple grounds
and the order granting summary judgment does not specify the ground
on which the summary judgment was rendered, the appellant must
challenge and negate all summary judgment grounds on
appeal. . . .  Similarly, an appellate court will overrule a challenge to fact
findings that underpin a legal conclusion or disposition when other fact
findings that support that legal conclusion or disposition go
unchallenged. . . .  The same result obtains when more than one legal
conclusion independently supports a judgment or ruling, but the
appellant challenges only one of those legal conclusions on
appeal. . . .  Likewise, when independent jury findings fully support a
judgment, an appellant must attack each independent jury finding to
obtain reversal.

Id. Britton is correct. See id. 
          The majority opinion misapplies both Britton and the underlying arguments
and law in this case. See id. Here, the jury charge asked the jury, “Did Stephen
Barth make a report of a violation of law in good faith to an appropriate law
enforcement authority?” The jury charge instructed that
“Violation of Law” refers to any violation of state or federal statute, an
ordinance of a local governmental entity, or a rule adopted under a
statute or ordinance. The University of Houston’s rules are adopted
under a statute. 

          There were no alternate questions that the jury could have answered to support
the judgment. The jury was asked a single question concerning whether there was a
report to an appropriate law enforcement authority. Thus, there was no alternate
question to support the judgment, as required for there to be any waiver under Britton. 
See id.
          The majority opinion’s finding of waiver is erroneous because (1) assuming
that an appellant must challenge each part of the definition of a term to avoid waiver,
the University did that here, and (2) the law of waiver does not require that an
appellant negate all theoretically possible alternative ways that are listed in a
definition of a term.
          First, assuming that, as the majority opinion holds, the appellant must challenge
each part of the definition of the term to avoid waiver, the University did that here. 
The definition of “Violation of Law” was challenged by the University in its
argument that only the Penal Code was violated, which addresses the portion of the
definition that states that the term “refers to any violation of state or federal statute,
[or] an ordinance of a local governmental entity.” The definition of “Violation of
Law” was further challenged by the University in its argument that no law was
violated because none of the University’s rules met the definition of law in the jury
charge, which defined law as “a rule adopted under a statute or ordinance.” Nothing
in the jury charge defined law as a state regulation. Thus, it was unnecessary for the
University to mention state regulations because that was not an alternative given to
the jury in the definition of “Violation of Law.” The University plainly argues that
the only law that the record shows could have been violated was the Penal Code and
that none of the University rules were laws. Thus, the University challenged every
theory under the definition of “Violation of Law” that was given to the jury.
          Second, the law of waiver does not require that an appellant negate all
theoretically possible alternative ways that are listed in a definition of a term. All that
is required is that the appellant challenge the evidence and theories actually presented
to the trial court or jury. Here, the University presented its theory that the only
evidence in the record that met the definition of law was the Penal Code violations. 
That challenge was sufficient to preserve the University’s legal-sufficiency
complaint.
          Unlike the examples in Britton that concern the failure to challenge alternate
grounds that could support a judgment, here the University’s argument attacks each
of the elements of a claim under the Act. The majority opinion stretches the law of
waiver by now saying that if a party’s closing argument presents multiple alternate
theories to the jury concerning a definition of one of the terms, to preserve error, the
appellant will have to negate each of those alternate parts of the definition in its initial
briefing, or any error will be waived, even if the appellant properly challenges each
of the elements of the claim and presents its theory concerning the applicable
definition of the term. That is not what Britton holds. See id. 
          In short, the majority opinion violates the briefing requirements of the Rules
of Appellate Procedure. See Tex. R. App. P. 38.1(e), 38.9. The majority opinion
accuses the dissenting opinion of “improperly becom[ing] an advocate for the
University” and states, “This we cannot do.” However, it is well established that an
intermediate appellate court has the obligation to address the arguments of the parties,
and that this is something that we must do.
          I would hold that the legal sufficiency challenge is not waived under these
circumstances, which undisputedly show that the University challenges the elements
of the cause of action, cites to the record, cites to case law, presents a cogent
argument, and presents a legally correct theory that could properly result in the
resolution of the appeal. See id. Because the University’s brief adequately challenges
the legal sufficiency of the evidence, the majority opinion errs by refusing to address
the points raised in the appeal. 
The Whistleblower Act
          The Whistleblower Act prohibits a state or local governmental entity from
taking adverse personnel action against “a public employee who in good faith reports
a violation of law by the employing governmental entity or another public employee
to an appropriate law enforcement authority.” See Needham, 82 S.W.3d at 317
(quoting Tex. Gov’t Code Ann. § 554.002(a)). We review de novo as a question of
law the determination whether the reports made to the University employees were to
appropriate law enforcement officials. City of Houston v. Kallina, 97 S.W.3d 170,
173 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).  
          The Act provides that “a report is made to an appropriate law enforcement
authority if the authority is a part of a state or local governmental entity or of the
federal government that the employee in good faith believes is authorized to:
(1) regulate under or enforce the law alleged to be violated in the report; or
(2) investigate or prosecute a violation of criminal law.” Tex. Gov’t Code Ann.
§ 554.002(b).
          A. The Definition of Law under the Whistleblower Act
          To determine whether Barth reported the conduct to the proper law
enforcement authority, it is necessary to first examine what laws were violated. 
Under the Act, “law” means a state or federal statute, an ordinance of a local
government entity, or a rule adopted under a statute or ordinance. Tex. Gov’t Code
Ann. § 554.001(1). An administrative rule or regulation is considered a law under
the statute. See City of San Antonio v. Heim, 932 S.W.2d 287, 290–91 (Tex.
App—Austin 1996, writ denied). However, a violation of a department’s internal
policy is insufficient to meet the definition of law in the Act. Harris County Precinct
Four Constable Dep’t v. Grabowski, 922 S.W.2d 954, 956 (Tex. 1996). Here, there
is no dispute that a violation of the Penal Code or a violation of a civil administrative
rule or regulation is considered a law under the Act. The dispute is whether an
administrative rule of the university or the university system is considered a law
under the Act. 
          Rules enacted by the Board of Regents meet the definition of law under the
Act. Fazekas v. Univ. of Houston, 565 S.W.2d 299, 304 (Tex. App.—Houston [1st
Dist.] 1978, writ ref’d n.r.e.) (“Since the Board of Regents of the University of
Houston is authorized by statute to enact bylaws, rules and regulations necessary to
the government of the University, its rules are of the same force as would be a like
enactment of the legislature.”). 
          The University contends that no evidence shows “that the Board, pursuant to
its statutory authority, actually adopted the rule or policy” and that, without that
showing, the evidence is legally insufficient to show that the rule or policy was a law,
as defined by the Act. The University’s position is that the situation here is unlike
Fazekas, because in Fazekas there was evidence before the court that the University’s
Board of Regents had revised the policy at issue in that case, but here, no evidence
shows the Board enacted the rule. Id. Barth responds that all the University’s rules
are enacted under the Board of Regent’s statutory authority. Barth contends that the
Board of Regents instituted its policies through the University’s System
Administrative Memorandum, commonly referred to as the SAM, and the
University’s internal Manual of Administrative Policies and Procedures, commonly
referred to as the MAPP. I address the SAM and the MAPP separately. 
                    1. The SAM
          The University’s position is that the SAM was not promulgated pursuant to the
Board’s authority. The University points to testimony by Guyton, the University’s
internal auditor who reported to the Board of Regents. Guyton testified,
You have three levels of policies. You have the Board policies, which
the Board of Regents develops, and then you have the System policies,
which is the system, the University of Houston system, that level. And
then you have the campus. Each of the campuses are under the System. 
So that’s the campus level policy.

The University contends, “Nowhere in this dialog does Guyton ever testify that the
Board of Regents adopted the MAPP or the SAM, approved them, or had any
authority over their creation in any way.”
          The University, however, ignores Guyton’s testimony describing the Board of
Regents’s role over the rules in the SAM. The record shows,
[Attorney:] The Board has their own policies?
[Guyton:] Right.
[Attorney:] But pursuant to those policies, they are policies that are
established for the University of Houston System as a
whole, correct?
 
[Guyton:] That’s correct.
 
[Attorney:] And there are also policies that, pursuant to the Board’s
authority, that are policies and rules that are issued for each
component of the University of Houston System?
 
[Guyton:] That’s correct.

(Emphasis added.) The record therefore supports Barth’s position that the policies
in the SAM are set forth under the authority of the Board of Regents for the
University of Houston System as a whole. Thus, according to Guyton’s testimony,
a violation of the SAM would be sufficient to show a violation of the law under the
Whistleblower Act because the SAM is an administrative rule set by the Board of
Regents, which is considered a law under the Act. See Tex. Gov’t Code Ann.
§ 554.001(1); Fazekas, 565 S.W.2d at 304. 
                    2. The MAPP
          Barth contends that the MAPP was enacted under the Board of Regents’
statutory authority. The record, however, has no evidence to support that assertion. 
Guyton testified as follows:
[Guyton:] At this time the Manual of Administrative Policies and
Procedures. That’s the University of Houston’s
Administrative Policy Manual.
 
[Attorney:]Those are - those are enacted pursuant to the authority of
the Board of Regents?
 
[Guyton:] No, that’s the campus policies.
A violation of the MAPP, therefore, is a violation of internal policy, which is not
subject to the protections in the Act. See Kallina, 97 S.W.3d at 175 (“Neither was
adopted by the Houston City Council. It is quite clear that these manuals (and the
hundreds of pages they contain) reflect internal policies rather than rules 
promulgated pursuant to an ordinance.”); Ruiz v. City of San Antonio, 966 S.W.2d
128, 130 n.5 (Tex. App.—Austin 1998, no pet.) (“Nothing in the record indicates the
Department promulgated its internal policies pursuant to statute or ordinance.”).



          B. Law Enforcement Authority in Whistleblower Act 
          Having determined that the SAM, regulations that govern state contracts, and
the Texas Penal Code are the pertinent laws, the next determination is whether Barth
reported the conduct was to an appropriate law enforcement authority. Barth
contends he had a good faith belief that his report to Guyton and Harris satisfied the
Act’s requirement that the report be made to an appropriate law enforcement
authority. The University, however, responds that none of the people to whom Barth
reported meet the definition of law enforcement authority under the Act, and the
report to the University Police Department came too late because it was after the
retaliatory acts claimed by Barth. I address separately each of the people to whom
Barth reported, Barth’s claim of good faith, and the ultimate report to the University
Police that came after the complained of retaliatory acts. 
                    1. The Report to Guyton
           Guyton, the internal auditor, would be an appropriate law enforcement
authority if he were authorized (1) to regulate or enforce the law alleged to be
violated in the report or (2) to investigate a violation of criminal law. See Tex. Gov’t
Code Ann. § 554.002. No evidence, however, shows that Guyton was an appropriate
law enforcement authority under the Act because (1) Guyton could not regulate or
enforce any civil law, including the SAM, and (2) Guyton could not investigate or
prosecute a violation of criminal law. See id.
                              a. Regulation or Enforcement of Civil Law
          As discussed in more detail in the section regarding waiver of the appeal, Barth
never asserts that Guyton, as the internal auditor, has the authority to regulate or
enforce any civil law, which is the first alternative way to prove that someone is a law
enforcement authority under the Act. See id. Barth limits his argument to the second
alternative way to prove that someone is a law enforcement authority under the Act,
which pertains to the person’s authority to investigate a violation of criminal law. 
Although Barth attempts to misapply the second alternative by referencing the
investigation of violations of civil law in addition to criminal law, the second
alternative plainly applies only to investigations of violations of criminal law. Tex.
Gov’t Code Ann. § 554.002 (“[A] report is made to an appropriate law enforcement
authority if the authority . . . is authorized to: (1) regulate under or enforce the law
alleged to be violated in the report; or (2) investigate or prosecute a violation of
criminal law”); see Needham, 82 S.W.3d at 317–18. 
          Assuming that Barth is attempting to assert that he could regulate or enforce
a civil rule or regulation, a close examination of the Government Code does not
support that position. Under section 2102.003, Guyton is authorized to conduct
audits including an “investigation described by Section 321.0136.” Tex. Gov’t
Code Ann. § 2102.003 (Vernon Supp. 2007). Section 321.0136 defines
“investigation” as “an inquiry into specified acts or allegations of impropriety,
malfeasance, or nonfeasance in the obligation, expenditure, receipt, or use of state
funds, or into specified financial transactions or practices that may involve such
impropriety, malfeasance, or nonfeasance.” Tex. Gov’t Code Ann. § 321.0136
(Vernon 2005) (emphasis added). Guyton’s duties, according to the Government
Code, are to report directly to the state agency’s governing board, to develop an
annual audit plan, to conduct audits, to prepare audit reports, to conduct quality
assurance reviews, and to conduct economy and efficiency audits. See Tex. Gov’t
Code Ann. § 2102.007 (Vernon Supp. 2007). Although the Government Code
authorizes Guyton to inquire about financial impropriety or malfeasance, nothing in
the Code gives Guyton the authority to “regulate under” or “enforce” the rules in the
SAM or any civil state rule or regulation. 
          Guyton’s trial testimony is consistent with the authority described in the
Government Code. As Guyton testified, “Our Board of Regents policy on auditing
has full and free access to personnel, books records, and they’ve got to talk to us. . . . 
I can’t fire anybody, or bring disciplinary action against them. All I can do is report
that.” Guyton thus acknowledges that he had no enforcement power. As Guyton’s
testimony and the Code make clear, Guyton is not a law enforcement authority under
the first alternative in the Act because Guyton could not regulate or enforce the SAM
or any civil rule or regulation. See Tex. Gov’t Code Ann. § 554.002.



                              b. Investigation or Prosecution of Violation of Criminal Law 
          Under the second alternative to prove that the report was to an appropriate law
enforcement authority, the evidence must show that Guyton could investigate or
prosecute a violation of criminal law. See id.; Needham, 82 S.W.3d at 319. 
“[G]eneral authority to regulate, enforce, investigate or prosecute” is “not enough.” 
 See Needham, 82 S.W.3d at 319 (emphasis in original). Barth contends that the
conduct concerning the false statements on the payment vouchers constituted the
crime of “Tampering with Governmental Record,” as described in section 37.10 of
the Texas Penal Code. Tex. Penal Code Ann. § 37.10 (Vernon Supp. 2007). 
          The Government Code gives Guyton the power to investigate and inquire into
financial impropriety and malfeasance pursuant to his duties as an auditor, but it does
not authorize him to conduct criminal investigations for purposes of prosecution. See
Tex. Gov’t Code Ann. §§ 321.0136, 2102.007. Guyton explains that he investigates
suspected criminal activity “up to the point where we say there is a possibility” that
fraudulent activity has occurred and then turns it over to the police.


 In his testimony,
Guyton describes his role as follows:
When we find evidence of suspected criminal activity, we turn it over to
the police and then assist them in their investigation. They’re the ones
who actually investigate the criminal activity.          Guyton’s role in the investigation of impropriety or malfeasance is similar to
that of the supervisor in Kallina, which was found to be legally insufficient. See
Kallina, 97 S.W.3d at 173–74. As the Kallina court stated,
Here, the reported violation concerned theft. There was no evidence
Harris or anyone else in the City’s asset management department had (or
that Kallina believed they had) any authority to investigate, enforce, or
prosecute a violation of the state’s penal laws regarding property theft. 
At most, the evidence showed Harris had administrative responsibility
for assets in the warehouse, regulated and enforced departmental rules for
protecting that property, and was required to investigate and report any
criminal activity. But Kallina conceded he knew Harris could only
forward evidence of theft to the police for actual investigation and
prosecution under state law. Needham holds this is not enough. 
 
Id. (citing Needham, 82 S.W.3d at 321) (emphasis added). I would hold that although
Guyton was required to investigate for improprieties and malfeasance, power to
conduct an inquiry as an auditor does not, as a matter of law, show that he was
authorized to “investigate a violation of criminal law” or prosecute criminal law
because, upon any belief that a criminal law was violated, his role as the auditor was
to turn the matter over to the police for a criminal investigation. See Tex. Gov’t
Code Ann. § 554.002. Guyton, thus, is not an appropriate law enforcement authority
as a matter of law.
                    2. The Report to Harris
          To show he reported to a proper law enforcement authority, Barth relies on his
report to Harris, the University’s Senior Vice-President for Finance and
Administration, the chief financial officer for the University, and the person to whom
the University Police Department reported. But Harris was not an appropriate law
enforcement authority under the Act.
 
                              a. Regulation or Enforcement of Civil Law 
 
          One way for Harris to be an appropriate law enforcement authority is for the
evidence to show that he could “regulate under” or “enforce” civil regulations or the
SAM. See Tex. Gov’t Code Ann. § 554.002. No one claims, and no evidence
shows, that Harris could regulate or enforce civil regulations concerning state
contracts. The question, therefore, is whether Harris could regulate under or enforce
the SAM, which are the rules that apply to the University of Houston system.
          The only argument by Barth is the single sentence that states that Harris “had
the authority to regulate and enforce [University] Rules with respect to financial
matters and improprieties.” The record shows that Harris had the authority to enforce
“the University of Houston’s rules regarding financial affairs.” Nowhere in this
testimony does it show whether Harris was referring to the rules in the MAPP or the
SAM. If Harris was referring to the “rules” in the MAPP, his authority would not
meet the requirements in the Act because the rules in the MAPP, as explained above,
are not considered law under the Act. However, if Harris was referring to the “rules”
in the SAM, his authority would meet the requirements in the Act because the rules
in the SAM, as explained above, are considered law under the Act. Because the
evidence does not specify whether the “rules regarding financial affairs” are the type
of rules that would be considered laws under the Act, the record fails to show any
evidence that Harris could regulate or enforce any law. 
                              b. Investigation or Prosecution of Violation of Criminal Law
          Barth contends that Harris’s general oversight over the University Police
Department is sufficient to show that he could investigate a violation of criminal law. 
The University’s position is that the administrative responsibility for the police
department did not give Harris any authority over the police investigative or
prosecutorial actions. 
          The mere fact that Harris provided the general oversight for the police
department does not give him the authority to investigate crimes. According to
testimony by Frank Cempa, a former University police officer, “the police department
was always autonomous in identifying criminal activity [and] present[ing] the findings
to the Harris County District Attorney’s Office.” The record shows that when Barth
reported his concerns about Stutts to Harris, Harris did not personally investigate
whether there were any violations of criminal law; rather, he referred Barth’s allegation
to Guyton and his audit team. To the extent that Harris had the authority to refer
concerns to the police or to Guyton, that power is similar to the investigatory power
found legally insufficient in Kallina because Harris’s role was limited to turning
information over to the police for the police to investigate. See Kallina, 97 S.W.3d at
173–74.



                    3. The Requirement to Report Violation to University Police
          Barth points to section 01.C.04 of the SAM, which provides that “employees
shall report suspected criminal activity” to the appropriate campus police department;
the University System Director, Risk Management or Component Risk Management
liaison; the Director of Internal Auditing; the University General Counsel; or the
Component Chief Financial Officer. Barth contends that this “System Rule on
reporting suspected criminal activity provides that a report to Harris, Guyton, Duffy or
the [University Police Department] triggers a report to all of them.” However, nothing
in the Act provides that the requirements are satisfied by a report to someone who is
not an appropriate law enforcement authority, but is required to report the conduct to
an appropriate law enforcement authority. See Needham, 82 S.W.3d at 321–22
(holding that Needham’s “belief that [the Texas Department of Transportation] could
forward information to another entity to prosecute a drunk driving allegation” was
insufficient to show good faith by Needham). 
          The record shows that section 01.C.04 of the SAM, to which Barth points,
plainly gives the police department the exclusive authority to conduct the investigation. 
Section 3.9 of the SAM states, “If the campus police department determines that the
crime committed is against the university, the campus police department shall file
charges.” Further, section 3.4 allows the campus police to request assistance from the
auditor “to assist in determining whether assets were misappropriated and to determine
the extent or estimated amount of loss.” These sections plainly show that the entity
responsible for conducting the criminal investigation is the University Police
Department, with others to assist it by providing information to the Department upon
its request. I would hold that no evidence shows that Harris could investigate or
prosecute a violation of criminal law. See Tex. Gov’t Code Ann. § 554.002. 
          C. Good Faith
           The University contends that based on Barth’s experience and training, Barth
could not objectively have had a good faith belief that he was making a report to an
appropriate law enforcement authority. An employee need only show a good faith
belief. Tex. Gov’t Code Ann. § 554.002(a). “Good faith” under the Act means
(1) the employee believed the governmental entity was authorized to (a) regulate under
or enforce the law alleged to be violated in the report, or (b) investigate or prosecute
a violation of criminal law; and (2) the employee’s belief was reasonable in light of the
employee’s training and experience. City of Weatherford v. Catron, 83 S.W.3d 261,
269 (Tex. App.—Fort Worth 2002, no pet.). “The test for good faith belief regarding
an appropriate law enforcement authority consists of a subjective and objective prong,
both of which must be satisfied in order to satisfy the good faith standard.” Tex. Dep’t
of Assistive and Rehabilitative Servs. v. Howard, 182 S.W.3d 393, 402 (Tex.
App.—Austin 2005, no pet.). Here, Barth’s testimony established the subjective prong. 
However, no evidence meets the objective prong.
          The objective prong requires that the employee’s belief that the report was made
to an appropriate law enforcement authority be reasonable in light of his training and
experience. Wichita County v. Hart, 917 S.W.2d 779, 784 (Tex. 1996). Consequently,
those who are trained in law enforcement and investigation are held to a higher burden
in establishing the reasonableness of their belief of criminal law violations. Id. at 785. 
For example, the reasonableness of a peace officer’s belief that a law has been violated
will be examined more closely than will the belief of one in another, non-law-enforcement profession. Id.; Grabowski, 922 S.W.2d at 956 (holding Grabowski did
not meet second prong because his belief was not reasonable “in light of his experience
as a peace officer” with “more experience than those in other professions in deciding
whether an act is a violation of law”).
          Barth was a practicing attorney, a faculty member at the University, a member
of the University Faculty Senate, and had experience with the requirements of the Act. 
I would hold that the evidence is legally insufficient to show that Barth’s belief was
objectively reasonable in light of his training and experience as an attorney who has
familiarity with the requirements of the Act. See Grabowski, 922 S.W.2d at 956; Hart,
917 S.W.2d at 784. I would hold that Barth could not objectively have had a good faith
belief that he was making a report to an appropriate law enforcement authority and,
therefore, that the evidence is legally insufficient to establish a violation of the Act.
          D. Causation
          Barth did ultimately report the purported violations to the University Police
Department, but that report came too late because it did not occur until after the
retaliatory acts of which he complains occurred. The University is correct that the
report to the University Police did not occur until June 23, 2000, which is after the
complained of retaliatory acts, because the last retaliatory act occurred on May 8, 2000,
when Barth received the evaluation for the 1999–2000 school year.


 Because the report
to the University police about Stutts’s conduct did not occur until after the complained-of acts against Barth by Stutts occurred, the evidence is legally insufficient to meet the
causation element of the Act. Further, the evidence is legally insufficient because no
evidence establishes any of the challenged elements of the Act. More specifically and
as explained above, no evidence shows that Barth made a report to an appropriate law
enforcement authority or that he acted in good faith in making the report to a person
he believed was an appropriate law enforcement authority. 
                                                          Conclusion
          I would reverse the judgment of the trial court and render judgment in favor of
the University. 
 
 
Elsa Alcala 
                                                             Justice
 
Panel consists of Justices Nuchia, Alcala, and Higley.
 
Justice Alcala, dissenting.